USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-24-20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

GABRAE HYLTON,

                         Petitioner,              20 cv. 5994 (JGK)

           - against -                            OPINION AND ORDER

THOMAS DECKER, ET AL.

                         Respondents.
_____

JOHN G. KOELTL, District Judge:

     This case, a petition for habeas corpus pursuant to 28

U.S.C. § 2241, concerns whether a lawful permanent resident's

prolonged mandatory detention under 8 U.S.C. § 1226(c), without

a bond hearing, violates the Due Process Clause of the Fifth

Amendment.  The petitioner, Gabrae Hylton, is a lawful permanent

resident of the United States.  He has been detained without a

bond hearing for over 14 months.  Mr. Hylton brings this

petition for a writ of habeas corpus against the respondents

Thomas Decker,[1] Chad Wolf,[2] and William Barr[3] in their official

capacities.  He seeks an Order requiring the respondents to

provide a bond hearing.  For the following reasons, the petition

for a writ of habeas corpus is **granted**.

                                 I.

     Petitioner Gabrae Hylton is a citizen of Jamaica and a

lawful permanent resident of the United States.  Pet. ¶¶ 5, 19.

_____

[1] Field Office Director, New York City Field Office, United States Immigration
& Customs Enforcement.
[2] Acting Secretary, United States Department of Homeland Security.
[3] Attorney General, United States Department of Justice.

                                 1

Mr. Hylton lawfully arrived in the United States as a juvenile in 2004, and he has resided in the United States thereafter. Pet. ¶¶ 2, 5, 19.   Several of Mr. Hylton's family members also live in the United States, including his father, mother, three siblings, and his six-year old son.   Pet. ¶ 20.   Mr. Hylton's son is a United States citizen and lived with Mr. Hylton on the weekends prior to Mr. Hylton's detention.   Pet. ¶¶ 20, 23.   Mr. Hylton financially supported his son, his son's mother, and his own mother, and he provided care to his severely ill father. Pet. ¶¶ 23-24.

On September 23, 2019, an agent from Immigration and Customs Enforcement ("ICE") called Mr. Hylton, asking him to report to the police station to assist in a criminal investigation.   Pet. ¶ 26.   Upon Mr. Hylton's arrival at the police station, 7 to 10 ICE agents surrounded and arrested Mr. Hylton.   Id.; Hylton Decl. ¶ 7.   Beginning September 23, 2019, Mr. Hytlon has been detained continuously by ICE at the Orange County Jail in Goshen, New York.   Pet. ¶¶ 3, 5, 26.

After his arrest on September 23, 2019, Mr. Hylton was given a Notice to Appear, alleging that Mr. Hylton was convicted in 2007 of third-degree rape pursuant to New York Penal Law § 130.25(3).   Pet. ¶ 27.   The Notice to Appear charged Mr. Hylton as removable pursuant to 8 U.S.C. §§ 1227(a)(2)(A)(i) and (iii) on the bases that the alleged conviction was both a crime

2

involving moral turpitude and an aggravated felony.  Id.  The
Department of Homeland Security ("DHS") determined that Mr.
Hylton was subject to mandatory detention under 8 U.S.C.
§ 1226(c).[4]  Pet. ¶ 30.  Mr. Hylton has not been arrested after
his arrest for the underlying crime.  Hylton Decl. ¶¶ 5-6.  Mr.
Hylton, who was in high school at the time of his 2007 arrest
for the underlying crime, id. ¶ 5, was sentenced to 360 days in
jail.  Pet. Ex. B.

Mr. Hylton filed a motion to terminate the removal
proceedings on November 25, 2019.  Pet. ¶ 32.  On January 9,
2020, the immigration court denied Mr. Hylton's motion and held
that Mr. Hylton was properly detained subject to § 1226(c).
Pet. ¶ 36.  Mr. Hylton timely appealed to the Board of
Immigration Appeals (the "BIA").  Pet. ¶ 39.  On August 13,
2020, the BIA remanded the matter to the immigration court
because the Government had not authenticated the documents used
to prove Mr. Hylton's conviction.  Response to Pet. Ex 9.  The
BIA noted that Mr. Hylton raised an authentication issue in the
motion to terminate, but the immigration court did not address
the issue.  Id.  On September 11, 2020, the immigration court
again denied Mr. Hylton's motion to terminate.  Respondent
Letter, ECF No. 12, Ex. 1.  Mr. Hylton timely appealed the

---

[4] Section 1226(c) provides that aliens who are inadmissible by reason of
having committed certain offenses are subject to mandatory detention.

3

immigration court's ruling and that appeal remains pending

before the BIA.   Respondent Letter, ECF No. 12, Ex. 2.

Mr. Hylton has not received an individualized bond hearing

during the course of his 14-month removal proceedings.   Pet.

¶ 45.

## II.

Federal district courts may grant a writ of habeas corpus

"whenever a petitioner is in custody in violation of the

Constitution or laws or treaties of the United States."   Wang v.

Ashcroft, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C.

§ 2241(c)(3)).[5]   This includes claims by non-citizens challenging

the constitutionality of their detention without bail. See

Boumediene v. Bush, 553 U.S. 723, 771 (2008); Demore v. Kim, 538

U.S. 510, 516-17 (2003).

Federal immigration law authorizes DHS to arrest and

initially detain an alien who has entered the United States and

is believed to be removable. See 8 U.S.C. § 1226(a).   Certain

classes of aliens are subject to mandatory detention and may

not, under the text of § 1226(c), be released until the removal

proceedings conclude.   Jennings v. Rodriguez, 138 S. Ct. 830,

837-38 (2018).   For example, aliens who have committed certain

crimes involving moral turpitude or aggravated felonies are

---

[5] Unless otherwise noted, this Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

subject to mandatory detention. 8 U.S.C. §§ 1226(c),

1227(a)(2)(A)(i) & (iii).

However, in Jennings, the Supreme Court left open the

possibility that individual detentions without bond hearings

might be so lengthy as to violate due process.  138 S. Ct. at

851.  "[T]he Due Process Clause may entitle even those

mandatorily detained under § 1226(c) to an individualized

determination as to his risk of flight and dangerousness."

Velasco Lopez v. Decker, 978 F.3d 842, 853-54 (2d Cir. 2020)

(quoting Demore, 538 U.S. at 532 (Kennedy, J., concurring)).

Thus, where there has been a prolonged mandatory detention of an

alien under 8 U.S.C. § 1226(c), without access to a bond

hearing, federal courts have found that the habeas petitioner's

Fifth Amendment Due Process rights were violated. See, e.g.,

Cabral v. Decker, 331 F. Supp. 3d 255, 262 (S.D.N.Y. 2018);

Sajous v. Decker, No. 18-cv-2447, 2018 WL 2357266, at *1

(S.D.N.Y. May 23, 2018); see also Zadvydas v. Davis, 533 U.S.

678, 682 (2001) (observing that "serious constitutional

concerns" are raised from "indefinite detention of aliens" who

were "admitted to the United States but subsequently ordered

removed"). In such cases, federal courts have the authority to

order that the petitioner be released from detention unless the

alien is provided with an individualized bond hearing.  See,

e.g., Hernandez v. Decker, No. 18-cv-5026, 2018 WL 3579108, at

*8 (S.D.N.Y. July 25, 2018); <u>Frederic v. Edwards</u>, No. 18-cv-5540, ECF No. 13 (S.D.N.Y. July 19, 2018); <u>Sajous</u>, 2018 WL 2357266, at *5, *8.

After <u>Jennings</u>, courts in this District have applied a case-by-case approach to petitions for bail hearings to determine whether detention has become "unreasonable" and thus a due process violation. <u>See</u> <u>Cabral</u>, 331 F. Supp. 3d at 260; <u>Sajous</u>, 2018 WL 2357266, at *10; <u>Vallejo v. Decker</u>, No. 18-cv-5649, 2018 WL 3738947, at *3 (S.D.N.Y. Aug. 7, 2018) ("Ultimately, determining whether detention violates the Due Process Clause requires a fact-dependent inquiry that will vary depending on individual circumstances.") (quoting <u>Young v. Aviles</u>, No. 15-cv-4545, 2015 WL 4579204, at *1 (S.D.N.Y. July 29, 2015)); <u>Hernandez</u>, 2018 WL 3579108, at *8 (holding that, under "a fact-dependent inquiry, [the petitioner's] detention has become unreasonably prolonged"); <u>Frederic</u>, No. 18-cv-5540, ECF No. 13 (same).

Under the case-by-case approach, courts examine an individual's detention circumstances to determine whether it has become "unreasonable or unjustified." <u>Demore</u>, 538 U.S. at 532, (Kennedy, J., concurring) ("[S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and

6

dangerousness if the continued detention became unreasonable or unjustified."); see also Zadvydas, 533 U.S. at 684-86.

## III.

### A.

A number of factors bear on whether a detention has become unreasonable or unjustified.  These factors include: (1) the length of time the petitioner has been detained; (2) the party responsible for the delay; (3) whether the petitioner has asserted defenses to removal; (4) whether the detention will exceed the time the petitioner spent in prison for the crime that made the petitioner removable; (5) whether the detention facility is meaningfully different from a penal institution for criminal detention; (6) the nature of the crimes committed by the petitioner; and (7) whether the petitioner's detention is near conclusion.  See, e.g., Cabral, 331 F. Supp. 3d at 261; Sajous, 2018 WL 2357266, at *10-11; Vallejo, 2018 WL 3738947, at *3; Hernandez, 2018 WL 3579108, at *6-7.  Applying these factors in this case compels the need for a bond hearing for the petitioner.

The first factor is the length of the detention.  This factor strongly weighs in favor of a bond hearing.  The petitioner already has been detained for over 14 months without a bond hearing.  Courts have found violations of due process in detentions without bond hearings lasting substantially shorter

periods of time.  See, e.g., Cabral, 331 F. Supp. 3d at 261

(over 7 months); Gordon, 2015 WL 1176706, at *3 (8 months);

Faure, 2015 WL 6143801, at *1 (detention would exceed 9 months

by the petitioner's next hearing).

The second factor is the party responsible for the delay.

This factor also tilts in favor of a bond hearing.  There is no

evidence that the petitioner has delayed the proceedings

unreasonably.  While Mr. Hylton has appealed the immigration

court's denial of his motion to terminate, he has not made any

frivolous motions or unnecessary requests for adjournments.  In

fact, the BIA agreed with his first appeal and remanded the

matter back to the immigration court.  His second appeal is

pending.  Mr. Hylton should not be penalized for using his

procedural remedies.  See Cabral, 331 F. Supp. 3d at 261.

The third factor is whether the petitioner has asserted

defenses.  This factor weighs in favor of a bond hearing.  In

this case, the petitioner has asserted defenses to his removal.

He has asserted that he was not subject to mandatory detention

pursuant to § 1226(c), and his father has applied for an

adjustment of status on Mr. Hylton's behalf.  Those defenses may

eventually prevail, and therefore this factor weighs in favor of

a bond hearing.

The fourth factor is the time of detention as compared to

the period of incarceration for the underlying offense.  This

8

factor weighs strongly in favor of a bond hearing.  Mr. Hylton was sentenced to 360 days in jail for his 2007 conviction. However, he has been detained for over 14 months, well in excess of his period of incarceration for the underlying conviction.

The fifth factor is the penal nature of the detention facility.  This factor also weighs in favor of a bond hearing. Mr. Hylton is held at the Orange County Jail, a penal facility. The conditions Mr. Hylton faces at the detention facility are similar to those he would face if he were detained criminally. Mr. Hylton lives in a 7-by-10-foot cell.  Hylton Decl. ¶ 26. His toilet has no cover, and he uses his shirt to cover it when he flushes.  Id.  Because of COVID-19, there are no classes or programs.  Id. ¶ 27.  None of his family members can visit him. Id. ¶ 28.

The sixth factor is the nature of the crime committed by the petitioner.  This factor cuts in both directions.  Whereas the alleged conviction for third-degree rape is a very serious offense, the crime occurred in 2006, while Mr. Hylton was in high school.  There is no allegation of any criminal conduct after his conviction.  Therefore, while the severity of the crime weighs against a bond hearing, the fact that the crime occurred over 13 years ago, with no subsequent criminal history, weighs in favor of a bond hearing.

The seventh factor is whether the petitioner's detention is near conclusion.  This factor weighs in favor of a bond hearing.  Currently, there is an appeal pending before the BIA.  That appeal was filed on October 1, 2020.  Mr. Hylton's previous appeal before the BIA was pending for about 5 months before a decision.  Assuming a similar timeline, another decision by the BIA still could be months away.  Moreover, that decision may not be the end of the litigation, because a further remand is possible.  Therefore, the fact that Mr. Hylton could be facing several months of further detention before the conclusion of his removal proceedings strongly favors a bond hearing.

Based upon these factors, Mr. Hylton's continued detention without a bond hearing is unreasonable.  Due process requires Mr. Hylton's release or a bond hearing to determine if he is a danger to the community or a flight risk.  See Zadvydas, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process Clause] protects.").

**B.**

The petitioner argues that, at his individualized bond hearing, the Government must justify his continued detention by clear and convincing evidence that he is a flight risk or a risk of danger to the community.  The Government argues that Mr.

10

Hylton should bear the burden of proof that he is not a flight risk or a risk of danger to the community.

In Lora v. Shanahan, the Court of Appeals for the Second Circuit held that an alien detained pursuant to § 1226(c) must be given a bond hearing within 6 months of the alien's detention, and that the detainee must be admitted to bail unless the Government establishes by clear and convincing evidence that the alien poses a flight risk or a risk of danger to the community.  804 F.3d 601, 616 (2d Cir. 2015), vacated 138 S. Ct. 1260 (2018).  That opinion was vacated after Jennings, where the Supreme Court held that the statutory text of § 1226(c) does not require a bond hearing after 6 months of detention.  Jennings, 138 S. Ct. at 847.  In Jennings, the Supreme Court also noted that § 1226(c) does not require the Government to bear the burden of proof by clear and convincing evidence at bond hearings. Id. at 847-48.  However, the Supreme Court specifically did not reach the constitutional arguments about the burden of proof or the standard of proof required under the Due Process Clause.  Id. at 851.

After Jennings, the Court of Appeals for the Second Circuit has now held that the Constitution requires that the Government bear the burden of proof by clear and convincing evidence at bond hearings for aliens held for prolonged detention pursuant to § 1226(a).  Velasco Lopez, 978 F.3d at 855-56.  There is no

11

reason to believe that the holding should be cabined to
§ 1226(a) without likewise applying it to prolonged detention
pursuant to § 1226(c).  First, the Velasco Lopez opinion
interchangeably cites cases where the alien is held under
§ 1226(a) and § 1226(c) for the proposition that the standard of
proof should be clear and convincing evidence.  Compare id. at
856 (citing Singh v. Holder, 638 F.3d 1196, 1203-04 (9th Cir.
2011), which required the Government to bear the burden of proof
by clear and convincing evidence at a bond hearing for an alien
held pursuant to § 1226(a)) with id. at 857 (citing German
Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 210
(3d Cir. 2020), which required the Government to bear the burden
of proof by clear and convincing evidence at a bond hearing for
an alien held pursuant to § 1226(c)); see also id. at 855 n.14
(interchangeably citing cases under § 1226(a) and § 1226(c) for
the proposition that the Due Process Clause requires the
Government to bear the burden of proof by clear and convincing
evidence at an alien's bond hearing).

Second, the court's rationale for applying the clear and
convincing evidence standard did not turn on whether the alien
was detained pursuant to § 1226(a).  Rather, the court noted
that "it is improper to allocate the risk of error evenly
between the individual and the Government when the potential
injury is as significant as the individual's liberty."  Id. at

12

856.  The same reasoning applies equally to aliens detained pursuant to § 1226(c).

Third, the clear and convincing evidence standard is appropriate given that the "Supreme Court has consistently held the Government to a standard of proof higher than a preponderance of the evidence where liberty is at stake."  Id. That the Due Process Clause requires the Government to justify prolonged detention by clear and convincing evidence also is consistent with the reasoning of courts of appeals to address the issue after Jennings.  See German Santos, 965 F.3d at 210; Aleman Gonzalez v. Barr, 955 F.3d 762, 781 (9th Cir. 2020).

Accordingly, at Mr. Hylton's bond hearing, to justify continued detention, the Government must prove by clear and convincing evidence that Mr. Hylton is either a flight risk or a danger to the community.

## CONCLUSION

The Court has considered all of the arguments raised by the parties.  To the extent not specifically addressed, the arguments are either moot or without merit.  For the reasons discussed above, the petition for habeas corpus is **granted**.  The respondents are ordered to release the petitioner unless they provide the petitioner with a bond hearing within **7 business days** of the date of this Order at which the Government must justify Mr. Hylton's continued detention based on his risk of

flight or danger to the community by clear and convincing

evidence.   The Clerk is directed to enter judgment accordingly.

The Clerk is also directed to close this case and to close all

pending motions.

       **SO ORDERED.**

**Dated:**     **New York, New York**
             **November 24, 2020**

                                       **John G. Koeltl**
                         **United States District Judge**